

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
DEC 0 3 2010
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

HIMANSHU R. THAKKAR,

    Debtor.
_____/

N. SHAH,

    Plaintiff,

v.

HIMANSHU R. THAKKAR,

    Defendant.
_____/

Case No. 6:10-bk-08557-ABB
Chapter 7

Adv. Pro. No. 6:10-ap-00238-ABB

## MEMORANDUM OPINION

This matter came before the Court on the: (i) Complaint (Doc. No. 1) filed by the *pro se* Plaintiff N. Shah, a/k/a Narendra H. Shah, a/k/a Narendrabhai Shah ("Plaintiff"), against the Defendant/Debtor Himanshu R. Thakkar requesting a debt of $600,000.00 be deemed nondischargeable; and (ii) the Debtor's Motion to Dismiss (Doc. No. 7) seeking dismissal of this adversary proceeding. The final evidentiary hearing was held on November 24, 2010 at which Debtor, his counsel, and Plaintiff appeared.

The Debtor's Motion to Dismiss is due to be denied and judgment is due to be entered in favor of Debtor pursuant to 11 U.S.C. Section 523(a)(2)(A). The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *Loan Transactions*

Plaintiff and Debtor were introduced by a mutual acquaintance fourteen years ago and became friends. Plaintiff, either individually or through the VN & NH Shah Family Trust ("Trust"), made several loans to Debtor for Debtor's various business ventures, which include a convenience store, a wholesale food distributorship, a Quiznos Restaurant, and a gas station operating as a Sunoco Express Mart located in Sanford, Florida. The Debtor jointly owns the gas station with his wife Amisha Sheth through the entity Avatar Investments, Inc. ("Avatar"). Avatar owns the gas station business and the real property on which the business is situated.

Plaintiff loaned a total of $450,000.00 to Debtor as of July 1, 2007. He made no further loans to Debtor after that date. The parties' dealings were undocumented until August 2007. They had a verbal agreement pursuant to which Debtor was to pay Plaintiff interest on the loans at the annual rate of eight percent. Debtor made periodic interest payments to Plaintiff through 2007. The parties presented no accountings of the loans made, payments received by Plaintiff, or how the loan funds were utilized. Plaintiff explained he kept making loans to Debtor because he "had a lot of faith in him."

Plaintiff, in August 2007, requested Debtor formalize their dealings in writing. Debtor, as the President of Avatar, executed on August 1, 2007 in favor of the Trust, a Promissory Note in the principal amount of $450,000.00 and a Security Agreement (Doc. No. 1). The Note sets forth interest on the principal sum is to be paid monthly to the Trust at the rate of eight percent per annum and the Note is "payable upon demand." Debtor executed a personal guarantee guaranteeing payment of the Note.

The Security Agreement is entitled "Security Agreement (Chattel Mortgage)" and was created to secure the Note. The Security Agreement grants the Trust a security interest in Avatar's business collateral described as: "All of the business, including all business assets, of Sunoco Express Mart located at 4001 Bedford Road, Sanford, Florida 32773" plus all such collateral subsequently acquired by Avatar, "all proceeds thereof," and "all increases, substitutions, replacements, additions and accessions thereto." Avatar represented in the Security Agreement such collateral was free and clear of any and all liens and encumbrances.

Contemporaneously with the execution of the Security Agreement and Note, Debtor presented to Plaintiff a handwritten list of Debtor's assets and Avatar's monthly expenses (Doc. No. 13, Ex. A) ("Financial Statement"). The Financial Statement was prepared by Debtor individually and sets forth gross assets of $2,525,000.00 and "total net worth" of $1,175,000.00 based upon:

(i) the gas station valued at $1,500,000.00 encumbered by a mortgage of $750,000.00;

(ii) a "house" valued at $500,000.00 encumbered by a mortgage of $150,000.00;

(iii) Quiznos restaurant valued at $225,000.00 with no encumbrances; and

(iv) a "warehouse" with inventory of $300,000.00 with no encumbrances.

The Financial Statement sets forth Avatar had gross monthly income of $50,000.00 and monthly expenses of $12,300.00. Avatar's gross monthly income previously was $65,000.00, but had declined "because of the bad economy." The Financial Statement concludes: "But again as I said you are only my priority to get paid as soon as possible."

3

Plaintiff was not represented by counsel during the loan transactions or the execution of the Note and Security Agreement. The Note and Security Agreement were prepared by counsel for Avatar.

Debtor ceased making loan payments to Plaintiff in September 2007. Plaintiff and the Trust engaged counsel in 2009 and instituted litigation in the Florida State Court against Avatar and Debtor for breach of the Note and to foreclose on the chattel mortgage. Plaintiff recorded the Security Agreement in the Official Record Book of Seminole County, Florida on April 23, 2010. Debtor filed his bankruptcy case on May 18, 2010, thereby staying the State Court litigation pursuant to 11 U.S.C. Section 362(a).

*Adversary Proceeding*

Plaintiff, either individually and/or as the Trustee of the Trust, filed a Complaint against Debtor titled "Complaint Objecting to Discharge of Debtor or to Determine Dischargeability of Debt." His pleadings are inconsistent regarding the capacity in which he instituted this adversary proceeding. He provided no documentation relating to the Trust or his relationship to the Trust.

Plaintiff pled no Bankruptcy Code or other statutory provisions in the Complaint. He presented no grounds for a denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a). This matter constitutes an 11 U.S.C. Section 523(a)(2)(A) cause of action. The Complaint meets the threshold for pleadings pursuant to the Federal Rules of Civil Procedure. The Complaint adequately sets forth a claim upon which relief can be granted. Debtor's Motion to Dismiss is due to be denied.

Plaintiff asserts Debtor committed fraud with respect to the loan transactions by:

(i)   representing to Plaintiff in 2007 "you are my first priority" regarding repayment of the loans;

(ii) falsely representing to Plaintiff in 2009 he intended to sell the Quiznos restaurant and pay Plaintiff $87,000.00 from the sale proceeds;

(iii) stating to Plaintiff during the execution of the Note and Security Agreement that Plaintiff did not need legal counsel and was not required to record the Security Agreement;

(iv) failing to grant Plaintiff a lien on the gas station's real property; and

(v) failing to repay the loans in full as promised.

Plaintiff asserts a debt of $600,000.00 is due and owing to him by Debtor, but provided no explanation as to how such amount was calculated.

Debtor testified he asked Plaintiff for the loans for his business ventures and all of the loan funds were used for the businesses. He, when each loan was made, intended to repay each loan with interest. He made interest payments to Plaintiff in accordance with their verbal agreement and was not in default of such agreement when the Note and Security Agreement were executed. He did not offer or promise Plaintiff a lien on the gas station's real property. He did not advise Plaintiff to refrain from recording the security interest or take any action to prevent Plaintiff from recording it.

Debtor explained he was unable to repay the loans because he had expanded his businesses too quickly and the economy collapsed. Those events, and a lawsuit filed against him relating to the wholesale food distributorship, caused his bankruptcy filing.

Debtor testified he believed the valuations in the Financial Statement were accurate in July 2007. The gas station had a value of approximately $1,000,000.00 in 2007 and a value of $600,000.00 on the Petition Date. He estimates it has a current value of $400,000.00, which is less than the mortgage of approximately $900,000.00 held by Fidelity Bank.

Debtor's testimony was credible. Plaintiff presented no evidence to rebut his testimony. Debtor's testimony regarding the Security Agreement is consistent with the document's plain and unambiguous language. The Security Agreement sets forth in its title it is a "Chattel Mortgage." It granted the Trust a mortgage in personal and chattel property, as particularly described in the Security Agreement, not real property. Plaintiff did not challenge the validity of or the collateral included in the Security Agreement in the State Court litigation, but recognized in his State Court pleadings the Trust holds a "Chattel Mortgage on business property" and attempted to enforce such mortgage (Doc. No. 1).

Plaintiff presented no evidence establishing Debtor, at any time in their business relationship, made a false representation to Plaintiff with the purpose and intent to deceive Plaintiff. A breach of a repayment promise does not constitute fraud.

Plaintiff has not established by a preponderance of the evidence the loans were incurred by the Debtor through false pretenses or fraud. Any and all indebtedness owed by Debtor to Plaintiff or the Trust is dischargeable and is due to be discharged. Judgment is due to be entered in favor of Debtor and against Plaintiff and the Trust.

## CONCLUSIONS OF LAW

*11 U.S.C. § 523(a)(2)(A)*

Plaintiff's Complaint adequately sets forth an 11 U.S.C. Section 523(a)(2)(A) claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 9. It contains "a statement calculated to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345

F.3d 866, 881 (11th Cir. 2003) *(citation omitted)*. Debtor's Motion to Dismiss is due to be denied.

The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (1) Debtor made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). Plaintiff must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of

reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

*Analysis*

This dispute emanates from undocumented loans between two friends. Plaintiff, motivated by friendship, loaned Debtor $450,000.00 at great personal expense. Debtor acknowledges he owes Plaintiff $450,000.00 and had an obligation to repay the Plaintiff the loan principal plus the interest at the rate of eight percent. Debtor, in September 2007, either could not or would not continue making payments to Plaintiff.

Debtor did not fulfill his payment obligation to Plaintiff. Failure to pay a debt is not the equivalent of fraud. Debtor, as reflected in his bankruptcy papers and testimony, has made a series of poor financial decisions resulting in unpaid debts of $2,020,154.00, including Plaintiff's loans.

The loan transactions arose through verbal promises. Debtor truthfully represented he would use the loans for his business ventures. All loan funds were used for business purposes. Debtor made interest payments to Plaintiff pursuant to their verbal

agreement. Debtor truthfully represented to Plaintiff his financial condition at the time the Security Agreement and Note were executed. Plaintiff did not extend any loans to Debtor based upon the Security Agreement or Note. All loan indebtedness had been incurred by Debtor prior to the execution of the Security Agreement and Note. Debtor later breached his payment promises due to the economic downturn.

Plaintiff did not establish Debtor made any false representations with the intent to deceive him or the Trust when the loans were made or in connection with the Security Agreement and Note. Plaintiff, by failing to establish the first nondischargeability element of 11 U.S.C. Section 523(a)(2)(A), failed to establish the second, third, and fourth elements. The loan indebtedness is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727(a).

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Debtor's Motion to Dismiss (Doc. No. 7) is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the indebtedness owed to Plaintiff and/or the Trust is **DISCHARGEABLE** as to the Debtor pursuant to 11 U.S.C. Section 523(a)(2)(A).

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 3rd day of December, 2010.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge